[No. 4619. Decided March 11, 1904.]

MARTIN C. WELSH, *Appellant,* v. S. A. CALLVERT *et al.,*
*as the Board of Land Commissioners, etc.,*
*Respondents.*[1]

PUBLIC LANDS—DEED OF STATE—FINDINGS AS TO CHARACTER OF
TIDE LANDS—COLLATERAL ATTACK—CLAIM THAT LANDS SOLD AS
SECOND CLASS TIDE LANDS ARE OYSTER LANDS. A deed from the
state purporting to convey all tide lands of the second class owned
by the state abutting upon a certain described shore line, which
was sold at the price fixed by law for second class tide lands, must
be considered as made after a finding of the state land department
as to the character of the land, nothing to the contrary appearing
in the record, and includes all the abutting tide lands; and such
deed being analogous to a patent is not subject to collateral attack
by a subsequent application to purchase a portion of the same
lands as oyster lands, upon the theory that the statutory definition
of tide lands, Laws 1897, p. 230, § 4, excepts oyster lands, and that
the deed conveyed, therefore, only such part of the abutting tide
lands as were not suitable for the cultivation of oysters.

[1]Reported in 75 Pac. 871.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered December 29, 1902, affirming on the merits an order of the board of state land commissioners rejecting plaintiff's application to purchase oyster lands, after a trial before the court without a jury. Affirmed.

*John T. Welsh* and *Martin C. Welsh,* for appellant.

*The Attorney General* and *E. W. Ross* and *C. C. Dalton,* for respondents.

HADLEY, J.—Appellant applied to the commissioner of public lands of the State of Washington to purchase certain lands in Skagit county, and which the application describes as "oyster" lands. The application was rejected by the board of state land commissioners, for the reason that the same lands had been theretofore sold and conveyed by the state to John Cryderman. The lands were sold to said Cryderman as second class tide lands. The appellant appealed from the decision of said board to the superior court of Skagit county. That court affirmed the decision of the board, and this appeal is from the judgment of the superior court.

Appellant contends that the lands are oyster lands and not tide lands, and we are referred to Session Laws, 1897, p. 230, § 4, subd. 2, for the legislative definition of tide lands, the same being as follows:

"Tide Lands: All lands over which the tide ebbs and flows from the line of ordinary high tide to the line of mean low tide, except in front of cities where harbor lines have been established, or may hereafter be established, where such tide lands shall be those lying between the line of ordinary high tide and the inner harbor line, and excepting oyster lands."

It is insisted, that the above definition of what shall

be known as tide lands specially excepts oyster lands from such classification; that said act of 1897, by § 39 thereof, classifies tide and shore lands into what are known as tide lands of the first class and second class; and that, by reason of the exception of oyster lands from the general definition of tide lands, they are a class to themselves, not belonging to either class of tide lands, and cannot be sold as such. It is insisted by appellant that even the application of Cryderman to purchase these lands states that they are suitable for the cultivation of oysters. A copy of the application is before us. It appears to have been prepared upon a printed form whereon blank spaces were left to be filled. The following is included in the application: ". . . that said land is _____ suitable for the cultivation of oysters, . . ." It will be observed that the blank space was evidently left, in the first instance, to be filled with some word negativing the oyster character of the land, when such is the fact. That it was not so filled, in this instance, respondents argue was due to mere oversight, inasmuch as the application repeatedly refers to the lands as tide lands, and specifically designates them, and asks to purchase them as tide lands of the second class.

But, in any event, whether the failure to fill the blank was an oversight or not, it nowhere appears in this record that the board of state land commissioners did not find as a fact that the lands were not suitable for the cultivation of oysters, and that they were second class tide lands. A deed conveying these lands was executed and delivered by the state to Cryderman, in consideration of $473.65, paid by the latter. Appellant does not, as we understand him, contend that the deed is absolutely void, but that it conveys only second class tide lands within the described area, and does not convey oyster lands

therein.   He therefore reasons that the oyster lands within the area are still open for sale and conveyance.

The deed purports to convey "all tide lands of the second class owned by the state of Washington situate in front of, adjacent to, or abutting upon that portion of the government meander line described as follows." Then follows a description of the meander line, making a total in all of 94.73 chains.   The price fixed by law for second class tide lands is $5 per lineal chain, and the amount of consideration named in the deed shows that exactly that sum was paid, based upon the number of chains above mentioned.   It is evident, therefore, that both grantor and grantee in the deed understood that all lands in front of the described meander line were second class tide lands, and were conveyed by the deed.   The state was the owner of all the lands within the area, and they were for sale. For reasons already stated, the deed itself shows that the state's officials found that the lands were all tide lands of the second class, and that they were sold and conveyed as such.   We therefore think it cannot be urged, in a collateral attack such as this one, that the deed did not convey all that was intended.   Although appellant disclaims an attack upon the deed, and admits that it conveys all tide lands of the second class within the specified area, yet his claim that it does not convey all the lands within the area which the parties evidently intended to convey is an attack upon it.

The deed, having been made by the state, and purporting to convey a portion of its public lands, is analogous to a patent issued by the United States for a portion of the public domain, and is governed by similar legal principles.   The state has created a land department, with administrative and executive functions similar to the land department of the general government.   That de-

partment is authorized to supervise the proceedings by which title is sought to be obtained to any portion of the state's public lands. Having supervised such proceedings in a given case, and having caused the deed of the state to issue, it becomes, in effect, the patent of the state, and cannot, under the rules established as to federal land patents, be collaterally attacked. In this connection the language of Mr. Justice Field, in *St. Louis Smelting Co. v. Kemp*, 104 U. S. 636, 640, 26 L. Ed. 875, is particularly pertinent. Because of its weight and direct applicability here, we quote at length:

"That the provisions may be properly carried out, a land department, as part of the administrative and executive branch of the government, has been created to supervise all the various proceedings taken to obtain the title, from their commencement to their close. In the course of their duty the officers of that department are constantly called upon to hear testimony as to matters presented for their consideration, and to pass upon its competency, credibility, and weight. In that respect they exercise a judicial function and, therefore, it has been held in various instances by this court that their judgment as to matters of fact, properly determinable by them, is conclusive when brought to notice in a collateral proceeding. Their judgment in such cases is, like that of other special tribunals upon matters within their exclusive jurisdiction, unassailable except by a direct proceeding for its correction or annulment. The execution and record of the patent are the final acts of the officers of the government for the transfer of its title, and, as they can be lawfully performed only after certain steps have been taken, that instrument, duly signed, countersigned, and sealed, not merely operates to pass the title, but is in the nature of an official declaration by that branch of the government to which the alienation of the public lands, under the law, is intrusted, that all the requirements preliminary to its issue have been complied with. The presumptions thus attending it are not open to rebuttal in an action at law."

Again, in the same opinion, when speaking of the presumptions attending patents for lands, the learned Justice said:

"Of course, when we speak of the conclusive presumptions attending a patent for lands, we assume that it was issued in a case where the department had jurisdiction to act and execute it; that is to say, in a case where the lands belonged to the United States, and provision had been made by law for their sale."

So, in the case at bar, the lands all belonged to the state, and, being for sale, under the law the land department had jurisdiction to act and execute a conveyance. In *Steel v. Smelting Co.,* 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226, the same principle is discussed. Speaking of the land department and its functions, the court remarked, as found at page 451 of said volume:

"Necessarily, therefore, it must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the nature of the land, and whether it is of the class which is open to sale. Its judgment upon these matters is that of a special tribunal, and is unassailable except by direct proceedings for its annulment or limitation. Such has been the uniform language of this court in repeated decisions."

At page 454, the same opinion, speaking of a patent issued by the government, says:

"It cannot be vacated or limited in proceedings where it comes collaterally in question. It cannot be vacated or limited by the officers themselves; their power over the land is ended when the patent is issued and placed on the records of the department. This can be accomplished only by regular judicial proceedings, taken in the name of the government for that special purpose."

In *French v. Fyan,* 93 U. S. 169, 23 L. Ed. 812, a question somewhat similar to the one at bar was involved. A patent had been issued for swamp and overflowed land.

Testimony was offered to show that it was not such land. The following appears in the opinion at page 172:

". . . and we are of opinion that, in this action at law, it would be a departure from sound principle, and contrary to well-considered judgments in this court, and in others of high authority, to permit the validity of the patent to the state to be subjected to the test of the verdict of a jury on such oral testimony as might be brought before it. It would be substituting the jury, or the court sitting as a jury, for the tribunal which Congress had provided to determine the question, and would be making a patent of the United States a cheap and unstable reliance as a title for lands which it purported to convey."

The following cases cited are in harmony with the principles above discussed, and support the view that the decision of the land department is conclusive on the courts when a patent, issued in pursuance of such decision, is collaterally attacked: *Ferry v. Street,* 4 Utah 521, 7 Pac. 712, 11 Pac. 571; *Palmer v. Boorn,* 80 Mo. 99; *Biddle Boggs v. Merced Min. Co.,* 14 Cal. 279; *McKinney v. Bode,* 33 Minn. 450, 23 N. W. 851; *Baker v. Newland,* 25 Kan. 25; *State ex rel. Marsh v. Board of Land Com'rs,* 7 Wyo. 478, 53 Pac. 292.

As we have seen, under the authority of *Steel v. Smelting Co., supra,* a patent cannot be vacated or limited by the officers themselves. It can only be accomplished by judicial proceedings, taken in the name of the government for that special purpose. By analogy we think the rule applies here.

The judgment is affirmed.

MOUNT, ANDERS, and DUNBAR, JJ., concur.