[No. 26864. Department Two. May 9, 1938.]

JOSEPH G. LARGE *et al., as Executors, Appellants,* v. EDNA R. SHIVELY, *Respondent and Cross-appellant.*[1]

[1]Reported in 79 P. (2d) 317; 82 P. (2d) 793.

*Revelle, Revelle & Kells,* for appellants.

*J. W. Graham,* for respondent and cross-appellant.

MILLARD, J.—On August 27, 1929, lot 1, section 1, township 22 north, range 4 W. W. M., "containing thirty acres more or less, except the land set aside for public roads," was sold under contract by Thomas S. Bassen and wife and Cora M. Graham to C. H. Shively and Edna R. Shively, his wife. On September 23, 1929, a rider was added to the contract, under which supplemental agreement a mortgage was negotiated and the vendors were obligated to pay the mortgage, which was given to secure the payment of a loan of money from George E. Large. The vendees, Shively and wife, completed, October 14, 1929, construction of a large frame dance hall called the Blue Ox and a smaller building joined thereto designated the Baby Ox, which buildings were erected pursuant to a provision of the contract of August 27, 1929. That is, the improvements were a part of the security which was inspected by Large before he made the loan.

In the spring of 1932, Cora M. Graham and Bassen and wife instituted an action against Shively and wife to cancel the contract of sale. To that action, a defense of fraudulent misrepresentation was pleaded. The trial court found,

"(3) That the chief value of the said property covered by said contract consisted in that portion thereof represented by plaintiffs as lying east of the said Olympic highway and that defendants would not have purchased the said property had they not believed the representations of plaintiffs that said property lying east of said road was a part of the said lot 1 above described.

"(4) That the major portion of the said lands lying east of said highway are now and were at the time of the execution of said contract, the property of the state of Washington, being state tidelands, and that the improvements hereinabove mentioned and described, are located upon said state tidelands; that plaintiffs have not now and did not have at the time of the execution of said contract any right or title in or to said tidelands, and have not at any time been able and are not now able to convey to defendants a title to the land lying east of the said Olympic highway of which they represented themselves to be the owners at the time of execution of said contract of sale.

" . . . . . . . . . .

"(10) That by reason of the false representations made by plaintiffs to defendants as to the boundaries of the property described in said contract of sale, the defendant Edna R. Shively has been damaged in the sum of $12,233.27 being the value of the improvements placed upon state tidelands and in the further sum of $1,675 paid upon the purchase price of said property, together with interest on said payments upon the purchase price from the dates of payment thereof to date of entry of judgment herein.

"(11) That defendant is entitled to a rescission of said contract of sale.

"(12) That the said tidelands together with the improvements thereon, hereinabove described, are subject to sale by the state of Washington, under the statutes relating to tidelands.

"(12) That the predecessors in interest of the said lot 1 section 1, Tp. 22 N. R. 4 W. W. M. acquired title to said property subsequent to the entry of the state of Washington into the Union by a cash entry and that title to said property does not include the title to said tideland upon the theory of relation back to original acts looking toward the acquisition thereof."

Decree in consonance with the findings was entered by the court September 14, 1932.

In the same month, Edna R. Shively, who had succeeded to any interest her former husband had in the

property, made application to the state land department to purchase the

". . . unsold tidelands of the second class in front of lot 1, section 1, township 22 north, range 4 west, on the west side of Hood Canal in Mason county."

The report of the state field engineer under date of September 5, 1933, on that application reads as follows:

"The tidelands in front of said lot lying outside the government meander line and extending out to a surveyed line were sold as oyster lands on June 3, 1904, under application No. 2875. The meander line does not correspond to the line of ordinary high water but is far outside same. The abutting upland lot 1 was patented by the U. S. November 23, 1891, and, therefore, the state owns the tidelands lying between the line of ordinary high water and the meander line and said area together with any tidelands that may lie outside the deeded oyster tract are covered by this application.

"Said tidelands were covered by application No. 9517, filed February 6, 1932, but litigation arose between the applicant and the owner of said lot 1, involving the location of the building known as the Blue Ox, which is located, at least in part, on the tidelands, and the application was rejected March 29, 1932, so as to clear the records of this office pending the settlement of the litigation.

"Reference is made to the reports of the engineer on said application for full details concerning the tract owned by the state. This applicant who was the defendant in the case was winner in the superior court of Mason county and then in the supreme court, securing a judgment for the amount paid to the upland owner and the cost of the Blue Ox and other buildings.

"The previous application showed that the abutting lot was owned by Cora M. Graham of Seattle and Thomas Bassen and wife of Everett, who were the plaintiffs in the litigation. This application states that the improvements consist of the Blue Ox dance hall and the Baby Ox building, the cost being $12,333. Con-

cerning the ownership and disposition of the buildings the decree contains the following provision:

" 'If the state of Washington shall sell and dispose of the tidelands involved in this action and shall receive from the purchaser thereof any sum of money for the improvements placed thereon by defendant, and if the said state of Washington shall pay said sum so received to the defendant, her heirs, representatives or assigns, then the amount so paid to defendant, shall be credited upon this judgment; and further if at the time of such sale the said judgment has been paid in full then the defendant shall have no claim against the proceeds from the sale of such improvements by the state and the said sum may, at the option of the state of Washington, be paid to the plaintiffs.'

"The tidelands covered by the application may be described as in the engineer's report on the previous application, as follows:

"All tidelands of the second class, owned by the state of Washington, situate in front of, adjacent to or abutting upon lot 1, section 1, township 22 north, range 4 west, W. M., with a frontage of 23.00 lineal chains, more or less.

"Excepting, however, that portion of said tidelands included in a tract in front of said section 1, conveyed by the state of Washington to Isham I. Youngblood, as tidelands suitable for the cultivation of oysters, through deed issued June 3, 1904 under application No. 2875.

"Subject, however, to a right of way for state road, as to any portions of said tidelands crossed thereby, same being shown on Plat No. 207 in the office of the commissioner of public lands at Olympia, Washington."

On December 18, 1934, the state commissioner of public lands entered an order, reading as follows, approving the sale to Mrs. Shively:

"It appearing to the commissioner at this time that under and pursuant to Application 9605, filed by Edna R. Shively, the second class tidelands in front of lot 1, section 1, township 22 north, range 4 west, W. M., in Mason county, were duly inspected, ap-

praised and advertised according to law and offered for sale on December 4, 1934, at which time the land was sold to the applicant at the appraised valuation, and

"It further appearing that the improvements on said tidelands were appraised at $9,000, and on the sale date the auditor of Mason county sold the land without obtaining a payment of this amount; that over a period of several months there has been a question as to the location of the high water line and the property line between the upland and the state-owned tidelands, that it was finally determined in the superior court of Mason county that the improvements were located partially on upland and partially on state tidelands and that they were placed upon the land believing that the title to the land was vested in the applicant, that the state land department therefore has made no claim to the improvements but allowed that Edna R. Shively, the purchaser and applicant, is the actual owner; that all circumstances and conditions necessary to a confirmation of this sale have been complied with, and the commissioner being fully advised, it is therefore

"ORDERED and DETERMINED that the sale of the second class tidelands in front of lot 1, section 1, township 22 north, range 4 west, W. M., to Edna R. Shively, as reported by the auditor of Mason county, under Application No. 9605, be and the same is hereby approved, and it is further

"ORDERED and DETERMINED that title to the improvements located on said tidelands is hereby declared in the name of Edna R. Shively and that no remittance to cover payment of the same be required."

The contract made December 18, 1934, by the state land department with Mrs. Shively recites the obligation on her part to pay $575, of which one-tenth was payable contemporaneous with the execution of the contract and $57.50 annually thereafter until the purchase price was paid.

In August, 1933, George E. Large, the mortgagee, instituted an action in the superior court for Mason

county against all of the makers (the vendors and vendees in the contract of August 27, 1929) of the mortgage held by him to foreclose that mortgage. On October 14, 1933, a decree was entered in that suit decreeing the lien of the mortgage to be a first and valid mortgage lien upon the real property described therein and directing that the same be sold in the manner provided by law upon mortgage foreclosure sale. On October 27, 1934, pursuant to the decree of October 14, 1933, the sheriff sold at public auction to George E. Large "lot 1, section 1, township 22 north, range 4 W. W. M. excepting public roads."

During the pendency of Mrs. Shively's application to purchase the tidelands, George E. Large instituted an action against the state land commissioner in the superior court for Thurston county and the makers of the mortgage held by him upon the theory of misrepresentation and fraud alleged to have been practiced by C. H. Shively and wife and other makers of the mortgage, in that those mortgagors represented to the plaintiff that the Blue Ox dance hall was being erected upon the real property "herein above described and not upon the tidelands in front thereof." That is, the mortgagors represented to Large that the improvements were located upon upland, when, in fact, the improvements were located upon tideland. The plaintiff further alleged that, in August, 1933, in an action instituted in Mason county by him for that purpose against all the makers held by him, a decree of foreclosure was entered October 14, 1933, decreeing the lien of the mortgage to be a first and valid mortgage lien upon the real property described therein.

The plaintiff also alleged that application had been made by Mrs. Shively to the state land commissioner for purchase of the second-class tidelands in front of lot 1; that the property sought to be purchased by

Mrs. Shively lies east of the Olympic highway, and the Blue Ox improvements are located thereon; that Edna R. Shively intends on the date of the sale to purchase the real property and improvements thereon for the sum of $575. There is a further allegation to the effect that the lands which Edna R. Shively sought to purchase were not public lands, but are, and were at the time of the execution of the mortgage above described, private lands owned by Bassen and wife, Cora M. Graham, and C. H. Shively and wife; that, if this assumption is incorrect and the lands upon which the improvements are situated lie east of the Olympic highway and are not a part of the real property mortgaged to George E. Large, then the lien of the plaintiff's mortgage should be transferred to and adjudicated to be a charge upon that portion of the real property lying east of the Olympic highway, together with the improvements thereon known as the Blue Ox dance hall and the Baby Ox.

The plaintiff prayed for a temporary restraining order enjoining the commissioner of public lands and the board of state land commissioners from proceeding with the sale of the tidelands to Edna R. Shively; and for a decree adjudging that the real property mortgaged to the plaintiff includes all of the real property east of the Olympic highway upon which the dance hall structures are located; or, if it be adjudicated that the real property in question is second-class tidelands of this state, that the plaintiff be adjudged to have a first and valid lien thereon, and that the right of Edna R. Shively to purchase the tidelands in question without paying for the improvements thereon be subjected to plaintiff's lien; that the plaintiff be subrogated to all the rights of Edna R. Shively with respect to the purchase of the lands and improvements.

. Judgment was entered February 3, 1934, upon sustaining of a demurrer to the complaint, dismissing the action. The plaintiff appealed.

We held (*Large v. Martin,* 178 Wash. 619, 35 P. (2d) 68) that plaintiff chose the remedy of foreclosure of the mortgage on real property, a part of which property, at least, was owned by the mortgagors, and obtained a decree to his liking, which decree provides only for foreclosure and sale and does not provide for a deficiency judgment against any of the makers of the promissory note to secure payment of which the mortgage was given. That is, the whole theory and purpose of plaintiff's case was that the lands upon which the improvements are situated are public lands, which is contrary to the representations of the mortgagors that the improvements were upon land owned by them; from which it logically followed that, as the state was not in any way indebted to the plaintiff, the plaintiff was not entitled to any relief against any of the defendants. The judgment was affirmed.

Subsequent to affirmance of the judgment in *Large v. Martin,* 178 Wash. 619, 35 P. (2d) 68, George E. Large instituted an action in Mason county. That action, like the instant one, arose out of a controversy over the title to lands fronting on Hood Canal. The first cause of action was upon the theory that, considering the lands as comprising two tracts adjoining each other at their easterly and westerly ends, respectively, the boundary line between them had become obscure and uncertain, resulting in a dispute between the respective owners, in consequence of which the plaintiff sought a decree directing that the exact boundary line be erected, established, and properly marked. The second cause of action, pleaded as an alternative, was based upon misrepresentation previously made by the defendant to the plaintiff

concerning the true boundary line. The plaintiff sought in the second cause of action to have the defendant estopped from asserting the boundary line to be other than as represented by her. Upon a trial to the court, an order was entered January 8, 1936, dismissing the action with prejudice.

The appeal of the plaintiff resulted in reversal. We held that the defense of *res adjudicata,* being an affirmative defense, must be pleaded and proved; that, when pleaded and denied by reply, as in the case at bar, an issue of fact is raised. We held, with respect to the action brought in Mason county to cancel the contract, that the appellant was not a party to that action and therefore was not bound by the judgment therein; that the allegations of fact respecting the former action brought in Thurston county, *Large v. Martin,* 178 Wash. 619, 35 P. (2d) 68, pleaded as a defense of *res adjudicata* and denied by plaintiff's reply, raised an issue of fact, and that the trial court could not, nor could we, judicially notice the record in another cause, even if between the same parties and in the same court, unless such record is both pleaded and proved. In reversing the judgment with direction to the trial court to proceed in accordance with the view therein expressed in our opinion, we said,

"It may well be that the Thurston county action does, as a matter of fact and of law, dispose of this case. Undoubtedly, that question would be open to respondent at a proper stage of the proceedings. But, until the proof necessary to establish the result and effect of that action had been properly presented, the court could not, by anticipation, consider that case in ruling on the question of *res judicata.*" *Large v. Shively,* 186 Wash. 490, 58 P. (2d) 808.

On March 30, 1935, Joseph C. Large and Elwyn Large, as executors of the estate of George E. Large, deceased, instituted this action against Edna R.

Shively in the superior court for Mason county, alleging that defendant holds a contract executed December 18, 1934, for the purchase from the state of Washington of certain second-class tidelands situated in Mason county, which tidelands adjoin certain lands of the late George E. Large on the east, and the exact boundary line between the two tracts has become obscure and uncertain; that the eastern boundary of plaintiff's land is the meander line and considerably east of the Blue Ox improvements, or that the mean high tide line is the eastern boundary of plaintiff's land.

The prayer is for a decree directing that the boundary between the land of the late George E. Large and the land being purchased from the state by the defendant be established and properly marked; that, if the boundary line of the land purchased by George E. Large under the foreclosure of the mortgage is found to be west of the meander line on Hood Canal and so located as not to include the land upon which the improvements are located, the defendant be estopped from claiming and asserting title to the land west of the meander line and upon which the improvements stand; and that Large be subrogated to the rights of the defendant as a purchaser of those lands; or, if such relief be denied and it be found that the boundary line is such as to divide the improvements upon the land, then that the respective rights of the parties in the improvements be decreed.

In the first cause of action, it is alleged that the Blue Ox improvements are on the upland. This is contrary to the contention in *Large v. Martin,* 178 Wash. 619, 35 P. (2d) 68, that the improvements are on the tidelands. The case at bar proceeds upon the same theory as *Large v. Shively,* 186 Wash. 490, 58 P. (2d) 808; that is, the boundary line between the

tract covered by the mortgage foreclosed by Large and the tract upon which the Blue Ox improvements are situated had become obscure and uncertain and a decree is sought under the statute, reading as follows, directing that the exact boundary line be established and marked:

"Whenever the boundaries of lands between two or more adjoining proprietors shall have been lost, or by time, accident, or any other cause shall have become obscure or uncertain, and the adjoining proprietors cannot agree to establish the same, one or more of said adjoining proprietors may bring his civil action in equity, in the superior court for the county in which such lands, or part of them, are situated, and such superior court, as a court of equity, may, upon such complaint, order such lost or uncertain boundaries to be erected and established and properly marked." Rem. Rev. Stat., § 947 [P. C. § 7412].

The cause was tried to the court, which found that the meander line is not the true boundary line between the two tracts of land, but that,

"The true boundary line is that line shown on plaintiff's exhibit N and described thereon as the 'high water line,' and the said E. C. Dohm, as commissioner appointed by this court in this action, has surveyed and completed said line and has properly tied the said line in with the United States government survey; and the said line as so surveyed and completed and tied, is shown on the map filed by the said commissioner herein, and marked commissioner's exhibit I., the said line being described as follows, to-wit: Starting at the meander corner between section 1, township 22 north, range 4 west, W. M., and section 36, township 23 north, range 4 west W. M., thence along the boundary line between said section 1 and said section 36 south 87°, west 56.78 feet to the true point of beginning; thence to a point 38.20 feet west and 27.16 feet south; thence to a point 73.15 feet west and 66.90 feet south; thence to a point 27.64 feet west and 77.63 feet south; thence to a point 56.88 feet west and 115.18 feet

south; thence to a point 23.79 feet west and 57.89 feet south; thence to a point 35.25 feet west and 80.93 feet south; thence to a point 18.59 feet west and 14.86 feet south; thence to a point 8.15 feet west and 144.95 feet south; thence to a point 1.89 feet west and 75.58 feet south; thence to a point 9.01 feet east and 53.68 feet south; thence to a point 20.38 feet east and 25.05 feet south; thence to a point 6.08 feet east and 4.75 feet south; thence to a point 24.57 feet east and 35.77 feet south; thence to a point 19.94 feet west and 67.00 feet south; thence to a point 23.46 feet west and 20.20 feet south; thence to a point 10.50 feet west and 13.91 feet north; thence to a point 14.45 feet west and 3.11 feet south; thence to a point 10.05 feet west and 48.79 feet south; thence to a point 5.68 feet west and 55.78 feet south; thence to a point 36.31 feet east and 1.83 feet north; thence to a point 3.14 feet east and 33.22 feet south; thence to a point 31.60 feet west and 28.70 feet south; thence to a point 22.65 feet west and 59.56 feet south; thence to a point 1.51 feet east and 62.81 feet south; thence to a point 12.16 feet west and 71.91 feet south; thence to a point 12.95 feet west and 55.15 feet south; thence to a point 24.60 feet west and 52.84 feet south; thence to a point 3.72 feet more or less west and 8.13 feet more or less south to the intersection of the south boundary of lot 1, section 1, township 22 north, range 4 west, W. M."

A decree in harmony with the foregoing was entered. The second cause of action was withdrawn by plaintiffs at the commencement of the trial and the complaint amended to include only the first cause of action. From the decree, the plaintiffs appealed and defendant cross-appealed.

Appellants contend that the meander line, which is east of the Blue Ox improvements, is the true eastern boundary of the upland; or, if the meander line is not the boundary, that mean high tide line is the boundary. If the meander line is the true eastern boundary, none of the improvements is upon tideland. If the mean high tide line is the boundary, a part of the

improvements is upon tideland. The appellants and respondent find common ground in that they agree that the trial court erred in adoption of the "Dohm" line as the boundary line between the two tracts.

We agree with respondent, who has cross-appealed, that the evidence preponderantly supports her contention that the land upon which the Blue Ox improvements are situated is tideland.

■ Respondent also insists that the finding by the state land department (which finding follows the finding of the superior court for Mason county in *Graham v. Shively*) that the improvements were upon tideland and sold to Mrs. Shively as upon and as a part of the tideland of the state, is conclusive.

The final order of the state land department approving the sale, after proper notice, of the tidelands on which are situated the improvements described as the Blue Ox and Baby Ox, recites the determination of the land department that those improvements are upon tidelands, and that the title "to the improvements located on said tide lands is hereby declared in the name of Edna R. Shively." The record does not disclose that the land department ever adopted the "Dohm" line as the boundary line between the upland and the tideland. It is not reasonable to suppose that, if the land department had adopted the "Dohm" line, it would have valued and sold the Blue Ox improvements as a whole. In its findings in the case of *Graham v. Shively*, 173 Wash. 475, 23 P. (2d) 881, the Mason county superior court definitely designated the land east of the highway as tideland. It is clear that the state land department intended to be governed by that decision. The determination of that tribunal (the state land department) respecting the boundary line between the two tracts of land is conclusive.

"The state has created a land department, with administrative and executive functions similar to the land department of the general government. That department is authorized to supervise the proceedings by which title is sought to be obtained to any portion of the state's public lands. Having supervised such proceedings in a given case, and having caused the deed of the state to issue, it becomes, in effect, the patent of the state, and cannot, under the rules established as to federal land patents, be collaterally attacked." *Welsh v. Callvert*, 34 Wash. 250, 75 Pac. 871.

The applicable rule is stated as follows in 50 C. J. 1001, § 265:

"Determination of Character of Land. Whether or not any particular tract of land was or is swamp land within the terms of the swamp land grant is a question for the decision of the secretary of the interior, or some other officer of the land department, according to the applicable statute.

"Operation and effect of determination. The duly authorized officer's determination and identification of the land is conclusive in the absence of fraud or mistake, except as against persons claiming under a paramount title. His determination cannot be collaterally attacked, or questioned or overthrown by parol evidence. The view has been taken that land which the secretary of the interior has listed to a state as swamp and overflowed passes under the grant, whether or not it is actually of that character."

During the pendency of the application of respondent to purchase the tidelands, Large brought an action against the land commissioner and others (*Large v. Martin,* 178 Wash. 619, 35 P. (2d) 68) in which he alleged that the improvements were located upon tidelands. Subsequent to our disposition of the appeal in that case and after Large had foreclosed his mortgage, the state entered into a contract under date of December 18, 1934, with respondent for the sale to her of the

tidelands upon which are located the Blue Ox improvements. On October 14, 1933, Large obtained a decree foreclosing his mortgage; and on October 27, 1934, he purchased at foreclosure sale the property mortgaged to him. He not only had notice but he had knowledge of the pendency of the application of Mrs. Shively to purchase the lands which had been found to be tidelands. Prior to the execution of the contract of the state land department, under which the tidelands were sold to Mrs. Shively, Large was afforded an opportunity to challenge, in the tribunal which was authorized to make the determination, the right of Mrs. Shively to buy and the right of the state to sell the land upon which the improvements were located as tidelands. Not having assailed in the forum, where he should have made his attack, the determination of the land department in a matter which is one of fact within the jurisdiction of the state land department, the action of that department is conclusive as against Large and his successors in interest.

While it is claimed to be brought upon the theory of a lost or uncertain boundary line, this action is no more and no less than one to determine that the land upon which the Blue Ox improvements are situated is not public land but is a part of the upland which was mortgaged to Large. That question is foreclosed.

The judgment is affirmed on appeal of the plaintiffs and reversed on cross-appeal of the defendant.

STEINERT, C. J., BLAKE, and ROBINSON, JJ., concur.

BEALS, J. (dissenting)—In my opinion, the trial court properly established the so-called Dohm line as the true boundary, and I accordingly dissent from the reversal of the judgment on respondent's cross-appeal.

[*En Banc.* September 19, 1938.]

Simpson, J.—The facts in this case are presented in the opinion of the Department of the court which first heard it. After the opinion was filed, a petition for rehearing was granted, and the case was reheard *En Banc.*

As we now view it, the controlling question is whether the present action and the issues presented therein have been rendered *res adjudicata* by virtue of an action instituted in November, 1933, in the superior court of Thurston county, cause No. 15289, by George E. Large v. A. C. Martin, commissioner of public lands, and the other members of the board of state land commissioners, Edna R. Shively, and certain other parties claiming an interest in the property in question.

The amended complaint in that case, admitted in evidence in the case at bar, recited, in part, that, to induce the plaintiff to make a loan, the vendors and vendees in the contract of sale, dated August 27, 1929, represented to the plaintiff that a certain dance hall, known as the "Blue Ox," was being constructed upon lot one, section one, township twenty-two north, range four, W. W. M., situated in Mason county; that the description included waterfront and land lying east of the Olympic highway and extending to the meander line and not upon the tidelands; that, relying upon these representations, the plaintiff was induced to make a loan to defendants October 13, 1929, secured by a mortgage upon the above described property; that, in August, 1933, George E. Large instituted an action in the superior court of Mason county against the vendors and vendees designated in the above mentioned contract of sale and certain other persons claim-

ing an interest in the real property; and that, October 14, 1933, a decree was entered adjudging the mortgage to be a first and valid mortgage lien upon the real property referred to above.

It was further alleged that, September 12, 1932, the defendant Edna R. Shively had filed an application with the commissioner of public lands to purchase all of the second-class tidelands in front of the upland property hereinbefore mentioned; that the board of state land commissioners intended to and would, unless enjoined and restrained therefrom, permit the sale of such land together with the improvements thereon; that Edna R. Shively intended, unless restrained, to purchase that real property together with the improvements; and that, if the lands and improvements lying east of the Olympic highway are not a part of the real property mortgaged to plaintiff as representated by the defendants, plaintiff's mortgage should be a lien upon that portion of the improved real property lying east of the Olympic highway.

The defendants demurred to the amended complaint. The trial court sustained the demurrer and dismissed the action.

Upon appeal, *Large v. Martin*, 178 Wash. 619, 35 P. (2d) 68, we affirmed the superior court, stating the plaintiff had chosen the remedy of foreclosure of the mortgage and obtained a decree to his liking, providing only for foreclosure and sale, and that the sale of the state's second-class tidelands could not be denied because of anything alleged in the amended complaint.

The present action was instituted during March, 1935, in the superior court for Mason county, by George E. Large against Edna R. Shively, alleging that the defendant holds a contract dated December 18, 1934, for the purchase of certain second-class tidelands situated in Mason county; which tidelands adjoin the lands of

plaintiff on the east, and that the exact boundary between the two tracts has become obscure and uncertain.

It was pleaded that, October 14, 1929, plaintiff was induced to make a loan to the defendant, Edna R. Shively, and the other parties to the contract of August, 1929, on the strength of the representation that the Blue Ox was being erected upon the property to be mortgaged and that the land described in the mortgage included the waterfront extending eastward to the meander line of Hood Canal; and if the boundary line of plaintiff's land is found to be westward of the meander line and so located as not to include the land upon which the improvements stand, that the defendant be estopped from claiming title to the land west of the meander line upon which the improvements stand; that the plaintiff be subrogated to the rights of the defendant as purchaser of such lands; or if such relief be denied, and it be found that the boundary line is such as to divide the improvements upon this land, then that the rights of the parties be decreed.

The defendant answered denying the allegations of the complaint, and alleged that the Thurston county action, cause No. 15289, is *res adjudicata* in this case.

In its reply, the plaintiff denied this allegation.

After the trial of the case, George E. Large, the original plaintiff, died, and the executors of his estate, Joseph G. Large and George Elwyn Large, were substituted as plaintiffs.

We will now consider whether cause No. 15289, *Large v. Martin, supra,* is *res adjudicata* with respect to issues presented in the case at bar.

In *Northern Pac. R. Co. v. Snohomish County,* 101 Wash. 686, 172 Pac. 878, we said:

"To make a judgment *res judicata* in a subsequent action there must be a concurrence of identity in four respects: (1) of subject-matter; (2) of cause of ac-

tion; (3) of persons and parties; and (4) in the quality of the persons for or against whom the claim is made."

While there are more recitals in the pleadings in *Large v. Martin, supra,* than in the instant case, the same issues were raised and included therein as are set forth in the present case, namely, the disputed boundary line between the uplands and the tidelands, and the alleged false representations of the mortgagors, of whom the respondent was one, to the mortgagee, were presented to the court.

In each case, the title to the land between the meander line and the highway was in question.

Neither the fact that more individuals were named parties defendant in addition to the respondent, nor the fact that the opinion in *Large v. Martin, supra,* was filed on August 27, 1934, and that appellant did not acquire the certificate of ·purchase until October 27, 1934, preclude the previous judgment in cause No. 15289 from being *res adjudicata.* The purpose, scope, and result of *Large v. Martin, supra,* have been both pleaded and proved in the instant case, and since we are satisfied that the four essential elements of *res adjudicata* have been met here, we now hold cause No. 15289 is *res adjudicata* with respect to this action.

The boundary line controversy, together with the false representations in regard to the premises covered by the mortgage, were in fact presented in the previous case or could have or should have been completely litigated therein.

In *Currier v. Perry,* 181 Wash. 565, 44 P. (2d) 184, we observed:

"On the main question in this case, there is no uncertainty about the rule in this state. As early as *Sayward v. Thayer,* 9 Wash. 22, 36 Pac. 966, 38 Pac. 137, it was stated:

" 'The general doctrine is that the plea of *res judicata* applies, except in special cases, not only to points

upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.'

"That rule has been steadfastly adhered to and followed in this state. Some of our cases so holding are, as follows: *Achey v. Creech,* 21 Wash. 319, 58 Pac. 208; *Spokane Valley Land & Water Co. v. Jones & Co.,* 53 Wash. 37, 101 Pac. 515; *Loeper v. Loeper,* 81 Wash. 454, 142 Pac. 1138; *Woodland v. First National Bank,* 124 Wash. 360, 214 Pac. 630; *Sprague v. Adams,* 139 Wash. 510, 247 Pac. 960, 47 A. L. R. 529; *Munro v. Irwin,* 163 Wash. 452, 1 P. (2d) 329; *Cascade Lumber Co. v. Hargis,* 167 Wash. 409, 9 P. (2d) 366; *Globe Construction Co. v. Yost,* 173 Wash. 528, 23 P. (2d) 895. In the last case, it was taken for granted that the rule is so well understood in this state that it was referred to in the terse, yet comprehensive language, as follows:

" 'The matter in controversy here was included within the matter in controversy there. It either was, or else could have been, adjudicated in the former action. That judgment, therefore, became *res judicata* of the issues and matters here presented.' "

We have adhered to this rule in *Baxter v. Central West Casualty Co.,* 186 Wash. 459, 59 P. (2d) 835.

The judgment is affirmed on appeal of the plaintiffs and reversed on cross-appeal of the defendant.

ALL CONCUR.