The majority, for the purpose of ascertaining the meaning of the statute in question, divides it into two parts: First, to ascertain the duty of the court and its powers; second, to show the authority of the superintendent of the hospital.
While it will readily be conceded that every presumption is to be indulged in favor of the constitutionality of a statute, and giving full effect thereto, I cannot subscribe to the construction placed upon the statute by the majority for the reason that, to my mind, Rem. Rev. Stat., § 6930 [P.C. § 2827], vests in the courts the power to determine the class and degree of insanity and, immediately after this judicial determination has been made, in the absence of any changed conditions, also vests the superintendent of the hospital for the insane with the power to determine the class and degree of insanity. Assuming, without deciding, that the legislature may reserve the question of the determination of the class and degree of insanity either for administrative or judicial determination, that power cannot be vested in both, to be exercised at one and the same time without any intervening changed conditions. In so far as the statute provides for the vesting in and exercise of this power almost simultaneously by two different branches of government, its provisions are incompatible, and hence the administrative authorities must defer to the judicial.
I am unable to agree that, in construing a statute, it *Page 411 
may be divided into two separate and distinct parts, and a separate meaning attached to each part by disassociating each part from the other. It is a fundamental rule of statutory construction that the whole act must be construed together, and each word, phrase, clause, and sentence considered with reference to the other words, phrases, clauses, and sentences appearing in the statute.
"The practical inquiry is usually what a particular provision, clause or word means. To answer it one must proceed as he would with any other composition — construe it with reference to the leading idea or purpose of the whole instrument. A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently each part or section should be construed in connection with every other part or section and so as to produce a harmonious whole. It is not proper to confine the attention to the one section to be construed. `It is always an unsafe way of construing a statute or contract to divide it by a process of etymological dissection, into separate words, and then apply to each, thus separated from its context, some particular definition given by lexicographers, and then reconstruct the instrument upon the basis of these definitions.'" 2 Lewis' Sutherland, Statutory Construction (2d ed.), 706, § 368.
See, also, Bradley Engineering Mfg. Co. v. Heyburn,56 Wn. 628, 106 P. 170, 134 Am. St. 1127; Rothweiler v. WintonMotor Car Co., 92 Wn. 215, 158 P. 737; Salo v. PacificCoast Casualty Co., 95 Wn. 109, 163 P. 384, L.R.A. 1917D, 613; State v. Hilstad, 148 Wn. 468, 269 P. 844.
The majority opinion, in referring to the portion of the statute relative to the court's judgment, says:
"A careful analysis of this section convinces us that the only determination the court is authorized to make at the time of the commitment is whether or not the person brought before it is insane, and that this is purely a judicial function; that at such time the court *Page 412 
is also authorized to determine and make findings in regard to the ability of the person, his estate, or relatives, to pay for the maintenance of such patient. It is true the court necessarily does, in arriving at his conclusion as to whether or not the person is insane, pass upon the findings made by the doctors, but we think this is only for the purpose of determining the question of insanity, and we find nothing in the statute which would authorize the court, at the time of the commitment or thereafter, to make a determination as to whether or not the patient was violently insane, for the purpose of determining the liability of either the state or the county, nor does the court in fact make any finding which would affect such right."
However, by the definite terms of the statute, either the court or jury is given the exclusive jurisdiction to ascertain, first, "the existence of the insanity of the person accused" and, second, if the court or jury find the accused insane, whether the insanity is
". . . of a recent or curable nature, or of a homicidal, suicidal or incendiary character, or that from the violence of the symptoms the said insane person would be dangerous to his or her own life, or to the lives and property of others if at large,. . ."
While Rem. Rev. Stat., § 6930, does not use the words "violently" and "not violently" insane in connection with the powers and duties of the courts as it does in connection with the powers and duties of the superintendent of the hospital, the language used in respect to the powers and duties of the courts with reference to determining the degree and class of insanity is, in substance, precisely the same.
The case of State v. Pierce County, 132 Wn. 155,231 P. 801, 46 A.L.R. 594, cited and relied upon by the majority, can have little weight here, for the reason that the statute in force at that time, namely, Laws of 1923, chapter 145, p. 466, was dissimilar in several important particulars, and provided for findings and *Page 413 
judgment by the court as to the insanity and degree thereof, as is required by our present law, and then stated:
"If the court finds that the insane person or his estate or relatives have not the financial ability to pay said sum and that such insane person is violently insane and dangerous to life and property and that such insane person should be committed to a hospital for the insane, the charges and costs above referred to shall be borne by the state of Washington. If the court finds that the insane person or his estate or relatives have not the financial ability to pay said charges and costs and that such insane person should be committed to a hospital for the insane, but is not violently insane and dangerous to life and property, the charges and costs above referred to shall be paid by the county from which the commitment is made." Rem. Comp. Stat., § 6930.
It was in construing that act that the court made the statement set out in the opinion of the majority, and while it was held in the Pierce County case that the fourteenth amendment of the United States constitution had not been violated, the court stated:
"The second answer is that the county really has its day in court, through the representation of it at the hearing by an officer of the state, who becomes an officer of the county, in that the county is but a state agency. The county's interests are protected by the judge who conducts the commitment proceedings. This has been held to be true in other instances and should be equally so here. State ex rel. Fowler v. Moore, 46 Nev. 65,207 P. 75; Baugh v. Baugh, 37 Mich. 59; Rehfuss v. Rehfuss,169 Cal. 86, 145 P. 1020; Powell v. Powell, 80 Ala. 595, 1 So. 549; and People ex rel. Healy v. Case, 241 Ill. 279,89 N.E. 638."
In other words, the court found that the fact relative to liability had been determined by the court at the time the commitment was made. A comparison of the 1923 statute with the one under consideration shows they are entirely different. Under the earlier law, the *Page 414 
court decided the liability of the state and the county in a judicial proceeding, while the present statute provides that the superintendent of the hospital may decide the liability of the state and county without a hearing and contrary to judgment of the court.
Counsel for the state contends that the county may defend when it is sued, as in the instant case. However, the county would not have any available defense, because the matter to be considered would be the class and degree of insanity at the time the patients were treated at the hospital. Under the terms of the statute, the county is not accorded any hearing when the superintendent makes his determination of the class and degree of insanity.
The majority also rely upon State v. Mulcare, 189 Wn. 625,66 P.2d 360. The statute involved in that case, Rem. Rev. Stat. (Sup.), § 10249-1 [P.C. § 4503-31] et seq. (Laws of 1935, chapter 114, p. 308), does not in any way limit the verdict of the jury or the judgment of the court in a criminal case. That statute allows the court and jury to determine the guilt or innocence of the person accused of crime and the grade of the offense, and does not vest these same functions in the board of prison, terms, and paroles so as to permit the board to nullify a judgment rendered by a court of competent jurisdiction.
The question of guilt is separate and apart from the question of punishment. If Rem. Rev. Stat. (Sup.), § 10249-1 et seq., provided that the parole board could determine, after the conviction of a crime, that the convicted person was guilty of a lesser degree of the offense charged than had been found by the jury, then the statute would be parallel to the one we have under consideration.
In its answer, the respondent has pleaded the defense of resjudicata, in that, in each and every instance, *Page 415 
the patients afterwards committed to the hospital were, by judgment of a court of competent jurisdiction, adjudged and decreed to have dispositions to injure others and were dangerous to be at large.
The state and county were parties to the various actions in the superior court at the time the accused persons were tried. The state was represented by the prosecuting attorney, and the actions were brought in the name of the state. The various judgments entered were binding upon the state and county. In each of the cases, there was a concurrence of the four conditions ofres judicata, namely: First, identity of the subject matter of the suit; second, identity of the cause of action; third, identity of persons and of parties to the action; and, fourth, identity of the quality in the persons for or against whom the claim was made.
In the case of Currier v. Perry, 181 Wn. 565,44 P.2d 184, this court stated:
"On the main question in this case, there is no uncertainty about the rule in this state. As early as Sayward v. Thayer,9 Wn. 22, 36 P. 966, 38 P. 137, it was stated:
"`The general doctrine is that the plea of res judicata
applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.'
"That rule has been steadfastly adhered to and followed in this state. Some of our cases so holding are, as follows: Acheyv. Creech, 21 Wn. 319, 58 P. 208; Spokane Valley Land Water Co. v. Jones Co., 53 Wn. 37, 101 P. 515; Loeper v.Loeper, 81 Wn. 454, 142 P. 1138; Woodland v. First NationalBank, 124 Wn. 360, 214 P. 630; Sprague v. Adams, 139 Wn. 510,247 P. 960, 47 A.L.R. 529; Munro v. Irwin, 163 Wn. 452,1 P.2d 329; Cascade Lumber Co. v. Hargis, *Page 416 167 Wn. 409, 9 P.2d 366; Globe Construction Co. v. Yost,173 Wn. 528, 23 P.2d 895. In the last case, it was taken for granted that the rule is so well understood in this state that it was referred to in the terse, yet comprehensive, language, as follows:
"`The matter in controversy here was included within the matter in controversy there. It either was, or else could have been, adjudicated in the former action. That judgment, therefore, became res judicata of the issues and matters here presented.'"
This rule has been followed in Large v. Shively, 194 Wn. 608,79 P.2d 317, 82 P.2d 793; and Briggs v. Madison,195 Wn. 612, 82 P.2d 113.
The present action instituted by the state is, in fact, a collateral attack upon each of the judgments rendered by the superior court in which the persons brought before it were adjudged insane.
In its reply, the state alleges: "That the court was without jurisdiction to adjudge the said insane persons to be violently insane or otherwise." A collateral attack upon a judgment is an attempt to avoid, defeat, or evade, or deny its force and effect in some incidental proceeding not provided by law for the express purpose of attacking it. A collateral attack denies any validity whatever to the former adjudication. 2 Words Phrases (3d Ser.), 133.
A judgment cannot be assailed collaterally unless it is void. A judgment imports verity, is presumed to be valid until set aside on appeal, and cannot be impeached by evidence de hors
the record. Merz v. Mehner, 57 Wn. 324, 106 P. 1118;Levinson v. Vanderveer, 169 Wn. 254, 13 P.2d 448; GlobeConst. Co. v. Yost, 169 Wn. 319, 13 P.2d 433.
The superior court is a court of general jurisdiction, and in the first instance had jurisdiction of the persons accused of being insane. Constitution of the state of Washington, Art. IV, § 6; Rem. Rev. Stat., § 6930. *Page 417 
Rem. Rev. Stat., § 404 [P.C. § 8078], states: "A judgment is the final determination of the rights of the parties in the action."
When a court of competent jurisdiction enters a judgment, such judgment is final and conclusive against any attack except by appeal, and it becomes absolutely final if no appeal is taken as provided by statute. It may not be changed or modified, regardless of whether it is right or wrong. State ex rel.Griffith v. Superior Court, 71 Wn. 386, 128 P. 644; Stateex rel. McGlothern v. Superior Court, 112 Wn. 501,192 P. 937; Blanchard v. Golden Age Brewing Co., 188 Wn. 396,63 P.2d 397; Davidson v. National Can Co., 150 Wn. 370,273 P. 185; Roethler v. St. Martins Mineral Springs Hotel Co.,154 Wn. 349, 282 P. 207; Hibbard Co. v. Morton, 184 Wn. 569,52 P.2d 313; Sitko v. Rowe, 195 Wn. 81,79 P.2d 688; 8 Bancroft, Code Practice Remedies (1928), 8574, § 6501.
The provisions of the statute relating to the determination of the degree of violence of the insane persons are irreconcilable, in that the act first compels the court to make the finding concerning the extent of the patient's insanity, and then provides that the superintendent of the hospital shall decide the same question forthwith upon his commitment to the state hospital. The word "forthwith" is defined in Webster's New International Dictionary (2d ed.) as follows: "Immediately; without delay; hence, within a reasonable time; promptly and with reasonable dispatch." The result would be to have the court make a judgment, and then allow the superintendent to overrule that judgment immediately after it was entered.
The court, in all of the cases mentioned, proceeded in accordance with the statute. Witnesses were called, who were sworn and testified, and from the evidence *Page 418 
adduced, the court entered a judgment which, in the absence of appeal, became final and conclusive as to everyone, including the state. The legislature in such cases has no power to authorize an administrative officer or any other person to change, alter, or modify the judgments committing the persons charged to the hospital for the insane.
The powers of the departments of government are not entirely independent of each other. In State ex rel. Washington TollBridge Authority v. Yelle, 195 Wn. 636, 82 P.2d 120, the court stated:
"The complete separation of governmental powers into the legislative, the executive, and the judicial is impossible. In order to cope effectively with many complex relations created by modern society, it is necessary to vest in administrative officers or bodies powers partaking of any two or all of these functions. The legislature manifestly cannot delegate the power to make purely substantive law, but may delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action dependent, provided it has enunciated a standard by which such an administrative body must be guided. State ex rel. Chicago, Milwaukee St. Paul R. Co. v.Public Service Commission, 94 Wn. 274, 162 P. 523; State v.Bayles, 121 Wn. 215, 209 P. 20; Royer v. Public UtilityDistrict No. 1, 186 Wn. 142, 56 P.2d 1302."
Legislative enactments, encompassing rightful subjects of legislation and falling within the province of the constitutional powers of the legislature, will not be revised by the courts. We are not concerned with the policy of a law as such. State v.Seattle Taxicab Transfer Co., 90 Wn. 416, 156 P. 837;Shorts v. Seattle, 95 Wn. 531, 164 P. 239; State v.Nelson, 146 Wn. 17, 261 P. 796; In re Peterson's Estate,182 Wn. 29, 45 P.2d 45; McDermott v. State, 197 Wn. 79,84 P.2d 372. *Page 419 
Notwithstanding the foregoing well settled principles, the legislature may not invade the province of the judiciary and set at naught a judgment of a court of competent jurisdiction by the enactment of a statute subsequent to the entry of the judgment. Any statute or part thereof attempting such an exercise of power is unconstitutional and void.
In the case of State v. New York, N.H. H.R. Co.,71 Conn. 43, 40 A. 925, the supreme court of errors of Connecticut said:
"The separation of the powers of government into three departments, each of which within its own sphere is supreme, is a constitutional principle which cannot be overturned. The judgment is the final and supreme act of judicial power. The legislature cannot overturn judgments, any more than the judiciary can make laws. A judgment is based upon established rules and principles administered by the judiciary.
"If the legislature can provide another tribunal to decide matters once decided by the judiciary, it could strip the judiciary of its functions, it could unsettle matters once determined, could substitute its will in place of settled principles of law, the growth of centuries, and it would in so doing destroy our system of government."
"The power to vacate or set aside judgments and decrees, must be exercised solely by the judiciary. The legislature cannot set aside a judgment, nor can it empower any court to set aside a judgment which had been rendered and had passed beyond the control of the court prior to the passage of the act; because in doing so the legislature is exercising judicial functions not accorded to it by the constitution." 1 Freeman on Judgments (5th ed.), 395, § 204.
"But the legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made; for this would not only be the exercise of judicial power, but it would be its exercise in the most objectionable and offensive form, *Page 420 
since the legislature would in effect sit as a court of review to which parties might appeal when dissatisfied with the rulings of the courts.
"As the legislature cannot set aside the construction of the law already applied by the courts to actual cases, neither can it compel the courts for the future to adopt a particular construction of a law which the legislature permits to remain in force. `To declare what the law is, or has been is a judicial power; to declare what the law shall be, is legislative.'" 1 Cooley's Constitutional Limitations (8th ed.), 190-191.
"The legislature cannot annul or set aside the final judgment of a court of competent jurisdiction, or take particular cases out of a settled course of judicial proceedings. . . . The result of any other rule would be seriously to interfere with the discretion and independence of the judiciary." 6 R.C.L. 162, § 163.
See, also, In re Petition of Siblerud, 148 Minn. 347,182 N.W. 168; People ex rel. Sprague v. Clark, 300 Ill. 583,133 N.E. 247; In re Cannon, 206 Wis. 374, 240 N.W. 441; Langeverv. Miller, 124 Tex. 80, 76 S.W.2d 1025, 96 A.L.R. 836;People ex rel. Lafferty v. Owen, 286 Ill. 638, 122 N.E. 132, 3 A.L.R. 447; 12 C.J. 831, § 308; Annotation, 3 A.L.R. 450, etseq.
As already indicated, the case at bar presents a somewhat anomalous situation, in that the same statute which vests the courts with power to inquire into the mental condition of persons and to determine the degree of insanity, also prescribes that the superintendent of the state hospital for the insane shall do likewise immediately after the court has rendered judgment and before any material changes have taken place in the mental condition of the patient due to care or medical treatment. It is plain that, if the legislature cannot render a judgment a nullity by virtue of the enactment of legislation after the judgment is entered, it must also necessarily follow that it is impotent to do so through the medium of the delegation *Page 421 
of authority to an administrative officer authorizing him to act upon the same facts forthwith following the entry of a judgment by a judicial tribunal of competent jurisdiction.
Laws of 1925, Ex. Ses., chapter 133, pp. 334-337, Rem. Rev. Stat., § 6930, is null and void in so far as it gives the superintendent of the state hospital authority to determine whether a patient is violently or non-violently insane.
I am of the opinion that the judgment of the trial court should be affirmed.
MAIN, MILLARD, and BEALS, JJ., concur with SIMPSON, J.